**UNITED STATES of America,**
**Appellee,**

v.

**Adolpho RIVERA, Jr., Appellant.**

**No. 1144, Docket 75–1109.**

United States Court of Appeals,
Second Circuit.

Argued June 24, 1975.

Decided July 14, 1975.

Thomas M. Fortuin, Asst. U. S. Atty. (Paul J. Curran, U. S. Atty., S. D. N. Y., John D. Gordan, III, Asst. U. S. Atty., of counsel), for appellee.

Jonathan J. Silberman, New York City (William J. Gallagher, Legal Aid Society, New York City), for appellant.

Before CLARK,* Associate Justice, MANSFIELD and MULLIGAN, Circuit Judges.

MULLIGAN, Circuit Judge:

Adolpho Rivera, Jr., appeals from a judgment of conviction rendered on January 28, 1975 in the United States District Court for the Southern District of New York, Hon. Inzer B. Wyatt, *Judge,* after a two-day jury trial. Rivera was convicted on counts two through five of a seven-count indictment filed on January 16, 1975. These counts encompassed the following:

—Count Two charged Rivera and co-defendant Rafael Fontanez with assault of a government agent, one Jerry Castillo, with the intent to rob him of money belonging to the government, in violation of 18 U.S.C. § 2114;

—Count Three charged the same two defendants with putting Castillo's life in danger during the robbery described in Count Two by the use of a dangerous weapon (a revolver), in violation of 18 U.S.C. § 2114;

—Count Four charged the defendants with assault on a federal officer, in violation of 18 U.S.C. §§ 111 and 1114;

—Count Five charged the use of a dangerous weapon in the assault described in Count Four, in violation of 18 U.S.C. § 111.[1]

Rivera went to trial alone after co-defendant Fontanez was found mentally incompetent to stand trial. Although Rivera was convicted on Counts Two through Five, he was sentenced on March 7, 1975 only on Three and Five, since Judge Wyatt held that Two and Four represented lesser included offenses. Rivera was given a sentence of twenty-five years' imprisonment on Count Three (fifteen years of which was to be served in a jail-type institution, with the rest suspended), and ten years' imprisonment on Count Five, this latter sentence to run concurrently with the sentence imposed on Count Three.

For reasons that will become apparent in this opinion, Rivera's convictions on Counts Two and Three must be reversed and remanded with instructions that they be dismissed. While the convictions on Four and Five are affirmed, they must be remanded for resentencing, since the original sentence on these counts may have been affected by the sentence on Count Three which is now set aside.

## I.  FACTS

At trial the government's chief witness was undercover agent Jerry Castillo

---

* United States Supreme Court, retired, sitting by designation.

1. Count One of the indictment, charging Rivera and Fontanez with conspiracy to murder Agent Castillo, was dismissed during the trial after the close of the Government's case; similarly, Count Six, which charged the defendants with using a firearm during the commission of the felonies described in Count One, was also dismissed. Count Seven charged Fontanez only with receiving a firearm while under indictment, and is not here relevant.

of the Drug Enforcement Administration. He testified to negotiations with Fontanez for the purchase of a kilogram of heroin, which culminated in a meeting in the Bronx. When Fontanez insisted upon seeing Castillo's money, Castillo opened the trunk of his car which contained $14,000 in one hundred dollar bills, supplied by the government for Castillo to make the "buy." Fontanez then drove Castillo's car on a wild and reckless ride through the Bronx, ultimately arriving at 196th Street and Colonial Avenue. There Fontanez parked the car and took the keys from the ignition, claiming that he had to show them to his connection to establish that he had the car which contained the money for the drug buy. Castillo objected and Fontanez relented and gave the keys back to Castillo. Fontanez returned approximately five minutes later with Rivera, now seen by Castillo for the first time. Fontanez, holding a plain brown paper bag, approached the driver's side of the car, where Castillo was now sitting. When Castillo opened the car door, Fontanez pointed a loaded revolver at him and said, "Okay, move over and let my man [Rivera] in the back seat." Rivera jumped into the rear seat of the car. Fontanez then took the car keys out of the ignition and told Castillo he was going to kill him. Castillo pleaded with Fontanez not to do so, telling him he could have the money in the trunk. Fontanez then told Castillo to put his hands behind his back; when the latter complied, Rivera, without further instructions from Fontanez, grabbed Castillo's wrists and held his hands. Fontanez then asked Rivera if he should kill Castillo then and there; according to Castillo, Rivera did not respond to this question. Fontanez then told Rivera to handcuff Castillo, saying he would drive him elsewhere to shoot him. At this point Rivera let go of Castillo's wrists for a moment.

Fortunately for Castillo, these proceedings were under surveillance by other agents, who now moved in on his signal. Two of them, in apprehending Rivera, found a pair of Spanish-made handcuffs sticking out of the back of his trousers.

At trial Rivera testified on his own behalf. He claimed he was only visiting a friend's house when Fontanez walked in; this was, according to Rivera, the first time he had ever met Fontanez. Rivera merely asked Fontanez for a ride home. When they reached the car and Fontanez drew his revolver, Rivera said he grabbed Castillo only because he was scared. When Fontanez asked if he should kill Castillo, Rivera said he replied in the negative. Rivera also testified that he had never possessed or even seen the handcuffs the agents said they had found on his person; he further claimed he never knew Fontanez had a gun until he saw it pointed at Castillo.

## II. COUNTS TWO and THREE

█ Rivera's convictions under 18 U.S.C. § 2114 cannot stand. While the language of that statute is couched in general terms,[2] it has been recently held in two cases in this circuit (both decided after the convictions entered here), that § 2114 is limited to offenses having a "postal nexus." *United States v. Reid,* 517 F.2d 953, 956–957 (2d Cir. 1975) (opinion of Judge Friendly); *United States v. Rivera,* 513 F.2d 519, 531–532 (2d Cir. 1975). There is no connection here with the Postal Service and the Government now concedes the inapplicability of § 2114. In a proper case it may be possible for the conviction to be affirmed in any event, since the defendant's action may fall instead under 18

---

2.  "Whoever assaults any person having lawful charge, control, or custody of any mail matter or of any money or other property of the United States, with intent to rob, steal, or purloin such mail matter, money, or other property of the United States, or robs any such person of mail matter, or of any money, or other property of the United States, shall, for the first offense, be imprisoned not more than ten years; and if in effecting or attempting to effect such robbery he wounds the person having custody of such mail, money, or other property of the United States, or puts his life in jeopardy by the use of a dangerous weapon, or for a subsequent offense, shall be imprisoned twenty-five years."

U.S.C. § 2112,[3] the general robbery-of-government-property statute; in such a case it would be necessary to remand for resentencing under § 2112, but the conviction could still be affirmed even though the wrong statute was cited in the indictment. *United States v. Rivera, supra*, at 533. However, that option is not available in the present case since it is clear that, on the facts established by the government, there was no "robbery" at all. This is so because there was no fulfillment of the venerable element of an "asportation," which is still essential for the crime of robbery. E. g., *United States v. Reid, supra*, 517 F.2d at 965 ("To constitute robbery, there 'must be both a taking *and a carrying away* of

the property.'" (citation omitted; emphasis in original)); *United States v. Nedley*, 255 F.2d 350 (3d Cir. 1958). The government does not claim, and could not since the money never left the trunk, that any asportation occurred but rather urges that none is necessary. However, the cases relied on by the government either concern the predecessor of § 2112, which defined two distinct offenses,[4] or merely deal with a defendant's obtaining constructive possession of property, rather than its asportation.[5]

At best, then, there was an attempted robbery, but that does not fall within § 2112, which covers the completed and not the inchoate crime. Therefore, the

---

3.  "Whoever robs another of any kind or description of personal property belonging to the United States, shall be imprisoned not more than fifteen years."

4.  The old statute, formerly 18 U.S.C. § 99, read as follows: "Whoever shall rob another of any kind or description of personal property belonging to the United States, *or* shall feloniously take and carry away the same, shall be fined not more than $5,000, or imprisoned not more than ten years, or both." (emphasis added). It has been held that, even assuming that carrying away is not an element of the first of the described offenses (which is analogous to the present § 2112), that offense still requires that the goods be "taken from the person of another and held by the robber for a perceptible interval of time." *Duffy v. Hudspeth*, 112 F.2d 559, 560 (10th Cir. 1940). Cf. *Rutkowski v. United States*, 149 F.2d 481, 483 (6th Cir. 1945) (taking a somewhat different view as to whether the older statute defined two separate offenses. In any case, the court still concluded that the crime of robbery includes at least some degree of asportation).

5.  Significantly, the constructive-possession cases cited by the Government do not involve the crimes of larceny or robbery, but rather such crimes as receiving a stolen car, or receiving or concealing narcotics. E. g., *United States v. Wolfenbarger*, 426 F.2d 992, 994–95 (6th Cir. 1970) (prosecution for receiving a stolen motor vehicle moving in interstate commerce); *United States v. Gitlitz*, 368 F.2d 501, 505 (2d Cir. 1966), cert. denied, 386 U.S. 1038, 87 S.Ct. 1492, 18 L.Ed.2d 602 (1967) (prosecution for receipt, concealment and facilitation of transportation of marijuana); *United States v. Pardo-Bolland*, 348 F.2d 316, 323–24 (2d Cir.), cert.

denied, 382 U.S. 944, 86 S.Ct. 388, 15 L.Ed.2d 353 (1965) (prosecution for receipt, concealment, sale, etc. of narcotics illegally imported into the United States). Robbery is a larceny from the person through force or the threat of force. Larceny has long since required that the property be asported or moved, see 4 W. Blackstone, Commentaries *231.

We note that the proposed new Federal Criminal Code, introduced in Congress on January 15, 1975 as S. 1, 94th Congress, 1st Session, defines theft broadly: "§ 1731 Theft —(a) Offense.—A person is guilty of an offense if he obtains or uses the property of another with [requisite] intent . . . ." Similarly, robbery occurs when a person "takes property of another from the person or presence of another by force and violence . . . ." (proposed § 1721). The working papers of the Commission set up to draft the new code indicate that the element of asportation would no longer be required to establish a theft or a robbery: ". . . all of the major forms of acquisitive behavior are meant to be covered, without inquiry into essentially irrelevant factors such as whether a caption or asportation has occurred, whether the defendant . . . had custody of the property, and the like." II Working Papers of the National Commission on Reform of Federal Criminal Laws 915 (1970). Since the code is merely a proposal not yet enacted into law, it is of course not controlling here. One wonders, however, how "caption" and "asportation" become essentially irrelevant in construing a statute which defines robbery in the traditional terms of taking property away from the person.

convictions on Counts Two and Three must be reversed.

### III. COUNTS FOUR and FIVE

Rivera fails to mount any serious attack on his convictions under Counts Four and Five of the indictment; we do not find it necessary to discuss his contentions here. However, though we affirm those convictions, we remand them for resentencing to insure that the original sentences on Four and Five were not affected by the twenty-five year sentence meted out on the now-reversed Count Three. See *United States v. Brown,* 479 F.2d 1170, 1173 (2d Cir. 1973); *McGee v. United States,* 462 F.2d 243, 246 (2d Cir. 1972).

The convictions on Counts Two and Three of the indictment are reversed and remanded so that they may be dismissed. The convictions on Counts Four and Five are affirmed, and are remanded solely for resentencing.