**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Barry Dale MARTIN,**
**Defendant-Appellant.**

**No. 84–8425**
**Non-Argument Calendar.**

United States Court of Appeals,
Eleventh Circuit.

Jan. 8, 1985.

Patrick F. McMahon, Marietta, Ga., for defendant-appellant.

Lark Ingram Tanksley, Asst. U.S. Atty., Atlanta, Ga., for plaintiff-appellee.

Before GODBOLD, Chief Judge, RONEY and HATCHETT, Circuit Judges.

GODBOLD, Chief Judge:

In this case a co-defendant, Guest, was charged with bank robbery under 18 U.S.C. § 2113(a) and (d). It was charged that he "did by force, violence, and intimidation take from the person and presence of Susan Warren" currency in the care and custody of the Citizens and Southern Bank, Airport Branch, East Point, Georgia, "and in committing the aforesaid offense did assault Susan Warren and put her life in jeopardy by the use of a dangerous weapon." The appellant, Martin, was charged

with aiding and abetting Guest. Martin admitted being an accessory after the fact but asserted that he knew nothing about the robbery until after it had occurred.

### I.

 Martin's conviction must be reversed because of error in refusing to accept a challenge for cause against a prospective juror. The complete record of voir dire of venireperson Ms. Boothe was as follows:

MR. McMAHON [defense counsel]: I believe, Ms. Boothe, you are an auditor with a savings & loan?

JUROR: With Decatur Federal.

MR. McMAHON: You trained as a teller. Did you ever talk to anyone that had experienced a bank robbery while working as a teller? Spoken to an employee that previously has been?

JUROR: Yes.

MR. McMAHON: Did she share with you her feelings or her feelings at the time this occurred?

JUROR: She experienced some fear.

MR. McMAHON: Being a bank employee, do you think you could listen to the evidence and not be affected by the fact you are an employee and you know of someone who has expressed a fear involved in a bank robbery and listen to the evidence and weigh it impartially?

JUROR: I would like to say I could. I don't know being an employee of the bank. I could probably be swayed against the defendant easily.

MR. McMAHON: I move to strike for cause.

THE COURT: Could you Ms. Boothe, if you were selected as a jury [sic], is there any question in your mind that the verdict you might render would be based upon the evidence you heard in the courtroom rather than something you heard outside the courtroom?

JUROR: I think I could stick to what was said in the courtroom.

THE COURT: And make a verdict based upon that?

JUROR: Yes, I feel I could do that.

THE COURT: I deny the motion to strike for cause.

MR. McMAHON: Can I pursue that?

THE COURT: If you want to.

MR. McMAHON: When you stated you thought you could be swayed against the defendant, would you explain what you meant by that?

JUROR: If there is the slightest bit of doubt of his innocence, I would feel that—I would—I would try to weigh what was said in the courtroom, but the slightest bit of doubt, I would say he was guilty probably.

MR. McMAHON: You would say he was guilty probably, I am having trouble hearing.

JUROR: I am a bank employee and that is going to have a big impact on my decision and I hope I could stick to what goes on in the courtroom but I cannot guarantee anything.

MR. McMAHON: I again move to strike, Your Honor.

THE COURT: I am going to deny the motion to strike for cause. I don't know that any juror can ever say how they are going to react until they hear what they are going to hear. I think her answer that she can go by the evidence is good enough.

MS. TANKSLEY: I think the proper question is whether she can be a fair and impartial juror.

THE COURT: I will deny the motion.

Breaking the voir dire down, several critical events occurred:

(1) Ms. Boothe identified herself as an employee of a savings and loan institution, acknowledged that she had been trained as a teller, and described her conversation with a teller who had been involved in a robbery and had experienced fear.

(2) She expressed doubt whether she could listen to evidence and weigh it impartially, unaffected by her status as employee and her knowledge of someone who had been involved in a bank robbery and had experienced fear. Her doubt was expressed in these ways:

—"I would like to say I could [consider the evidence impartially and not be affected]."

—"I don't know [whether I could] being an employee of the bank [savings and loan association]."

—"I could probably be swayed against the defendant easily."

At this point, had nothing else happened, Ms. Boothe plainly was disqualified.

The government's position is that she was rehabilitated by the next series of questions, asked by the court, inquiring if there was any question in her mind whether she would render a verdict based on evidence heard in the courtroom rather than something heard outside. First, these questions did not at all reach Ms. Boothe's status as an employee and what effect it would have on her. Her three (qualified) answers, quoted above from the record, were predicated upon both her status as employee and her conversation with another person who had been involved in a bank robbery. The court's questions only reached what she had heard; they did not touch upon the possible effect of her status as employee. Her answer was twofold, and both prongs were qualified:

—"*I think* I could stick to what was said in the courtroom."

—"Yes, *I feel* I could do that ['make a verdict' based on what was said in the courtroom]."

We need not decide whether these qualified statements, reaching only one of the two sources of her doubt, were enough to rehabilitate her, because the defendant conducted further questioning.

To counsel's question asking Ms. Boothe what she meant by being "swayed against the defendant," she responded:

—"If there is the slightest bit of doubt of his innocence, I would feel that—I would—I would try to weigh what was said in the courtroom, but the slightest bit of doubt, I would say he was guilty probably."

—"I am a bank employee and that is going to have a big impact on my decision and I hope I could stick to what goes on in the courtroom but I cannot guarantee anything."

Summarizing, she reiterated that she would *try to* weigh what was said in the courtroom. She stated that if there were the slightest bit of doubt of his innocence she would say "he was guilty probably." She reiterated her *hope* that she could stick to what went on in the courtroom but qualified it by saying that she could not "guarantee anything." And she stated unequivocally that her status as a bank employee was "going to have a big impact on my decision." These statements are inconsistent with the capability to reach a decision based upon the evidence. They are inconsistent with willingness to only find guilt upon proof beyond a reasonable doubt. The statement of Ms. Boothe that her status as bank employee was going "to have a big impact on my decision" is wholly inconsistent with deciding on the evidence presented in the courtroom; rather it is a candid acknowledgement that she would be affected by matters not in evidence.

Ms. Boothe did not serve on the jury. The defendant had ten peremptory strikes and used all of them, including one used to remove Ms. Boothe.

■ The government relies upon cases where, after a potentially disqualifying fact or statement emerged, the juror unequivocally stated his ability and willingness to reach a decision based solely on the evidence. For example, in *Copeland v. Gulf Oil Corp.*, 672 F.2d 867, 870 n. 7 (11th Cir.1982), here is what occurred:

JUROR McBRIDE: And if this would bear on it, I just want to bring it out for the record.

THE COURT: I need to ask you whether it would bear on it. Your obligation, if selected as a juror here, would be to base your verdict in this case purely and solely on the evidence as it comes to you in the case and on the law as I give it to you. Can you do that, laying aside any experience you may have had because you've had some experience one way or the other in handling various disputes.

JUROR McBRIDE: Yes, as presented here.

It is, of course, sufficient if a juror can lay aside his impressions or opinions and render a verdict based upon the evidence presented in court. *U.S. v. Davis*, 583 F.2d 190, 197 (5th Cir.1978); *U.S. v. Jimenez-Diaz*, 659 F.2d 562, 568 (5th Cir.1981). Ms. Boothe did not do that. Her expressions of ability to abide by the evidence presented in court were at most qualified, and that she would be affected by being a bank employee was unqualified.

■ Thus the trial court erred by refusing to accept Martin's challenge for cause. This forced him to exercise one of his peremptory challenges to prevent Ms. Boothe from serving on the jury. Since Martin exhausted all ten of his peremptory challenges, the court's error impaired his substantial right to his alloted number of peremptory challenges. *U.S. v. Boyd*, 446 F.2d 1267, 1275 & n. 27 (5th Cir.1971); *Francone v. Southern Pacific Co.*, 145 F.2d 732, 733–34 (5th Cir.1944).

## II.

Martin also argues that the district court's recharge of the jury was error. To determine whether Martin aided and abetted the crime of bank robbery or simply was an accessory after the fact, the jury requested to know when the crime of bank robbery ends and the crime of accessory after the fact begins. The court instructed, in part, that if Guest were still "asporting" the money or "taking" and "transporting" it, then the bank robbery was still in progress. Martin argues that this instruction was error because the robbery ended when Guest departed the bank building since there was no pursuit. Because this question is likely to arise again on retrial, we address it now.

■ The crime of bank robbery under 18 U.S.C. § 2113(a) "continues throughout the escape for purposes of characterizing the involvement of additional parties who knowingly and willfully join in the escape phase only." *U.S. v. Willis*, 559 F.2d 443, 444 n. 5 (5th Cir.1977). The essential question, then, is when the escape is at an end.

■ The answer is not, as Martin argues, when the pursuit is over. *Willis* in no way suggested that the escape is complete once pursuit ends. Indeed, the Eighth Circuit, upon which Martin relies, clearly rejects his theory. In *U.S. v. Jarboe*, 513 F.2d 33 (8th Cir.), *cert. denied*, 423 U.S. 849, 96 S.Ct. 90, 46 L.Ed.2d 71 (1975), the court rejected the contention that the robbery was complete once the gunman left the bank although there is no indication in the case that there was any actual pursuit. Instead, the court upheld the aiding and abetting conviction of the defendant who waited in a car two blocks away. The "taking" contemplated by Sec. 2113, it reasoned, is not completed until "the possibility of the item being recovered" has ended. *Id.* at 37. Thus, while the case rules that the offense described in Sec. 2113(a) extends for "hot pursuit," this must be understood to mean that the escape continues so long as flight occurs from the possibility of hot pursuit.

■ Applying this rule to the present case, we conclude that the trial court's instruction was error. If the court had simply charged the jury that the robbery continued as long as Guest asported the money this might have been imprecise but probably not error. The offense defined in Sec. 2113(a) is analogous to common law robbery, *Prince v. U.S.*, 352 U.S. 322, 324 n. 2, 326 & n. 5, 77 S.Ct. 403, 404 n. 2, 406 & n. 5, 1 L.Ed.2d 370 (1957); *U.S. v. Brown*, 547 F.2d 36, 39 (3d Cir.1976), *cert. denied*, 431 U.S. 905, 97 S.Ct. 1698, 52 L.Ed.2d 389 (1977), of which asportation is an element. *Brown v. State*, 619 F.2d 376, 378 (5th Cir.1980), *see also U.S. v. Rivera*, 521 F.2d 125, 128 (2d Cir.1975); *U.S. v. Reid*, 517 F.2d 953, 965 (2d Cir.1975). However, to charge that the robbery was not complete as long as the money was being "transported" impermissibly extends the crime. The money could continue to be transported long after the possibility of hot pursuit had ended.

REVERSED.