915 F.2d 1574
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Van Lee SMITH, Defendant-Appellant.
 No. 90-3084.
 United States Court of Appeals, Sixth Circuit.
 Oct. 2, 1990.
 
 Before KRUPANSKY and BOGGS, Circuit Judges, and ENSLEN, District Judge.*
 PER CURIAM.
 
 
 1
 Van Lee Smith was convicted by a jury of robbing the Huntington National Bank in Columbus, Ohio on April 25, 1989, along with Charles Ramone White and Genovis Durr, and making off with $20,964. Smith was charged under 18 U.S.C. Sec. 2113(a) and (d) (bank robbery with the use of a dangerous weapon) and 18 U.S.C. Sec. 2 (aiding or abetting).[1] He pled not guilty to both counts. Durr and White pled guilty to this and other bank robberies and testified against Smith. On January 19, 1990, Judge Kinneary sentenced Smith to serve 72 months in prison and to pay the $50 mandatory special assessment. On appeal, Smith challenges the sufficiency of the evidence to support his conviction.
 
 
 2
 * The jury convicted Smith on the following facts. On the morning of April 25, 1989, Durr and White borrowed a car to commit the robbery of the Huntington Bank, which the two of them had planned. While driving, they encountered Smith. White asked Smith to ride with them and the three drove to the bank. While White and Smith waited in the car, Durr entered the Huntington Bank wearing a mask and carrying a pistol. He fired the gun and ordered bank employees to "hit the floor." Durr took $20,964 from the counter and the teller drawer, then ran from the bank, disappeared down an alley, and rejoined White and Smith in the car. The three drove to the parking lot of an apartment complex in Columbus, where they split the money. Smith's share was approximately $1,500.
 
 
 3
 Smith claims that he was an innocent passenger. He argues that the government's evidence merely puts him at the scene of the crime but does not indicate that he had knowledge of, or participated in any way in, the robbery.
 
 
 4
 Both Durr and White testified that the two of them planned the robbery without the assistance of Smith, and that Smith had no knowledge of their intent to rob the Huntington bank when White asked him to get in the car. White testified that by the time the three had arrived at the Huntington Bank, Smith knew what they were going to do. Durr, however, testified that Smith slept in the car, and that when he (Durr) got out of the car to rob the bank, Smith was "all groggy and he laid back in the seat and went back to sleep." At another point, Durr testified that Smith was asleep as he left the car to rob the bank. However, Durr also testified that Smith, apparently a very large man, let Durr into the back seat of the car by moving his seat forward as Durr ran from the bank.
 
 
 5
 Both White and Durr testified that Smith was given a share of the money from the robbery. White testified that Smith knew where the money came from, but that there had been no agreement beforehand that Smith would get some of the money. He also stated that Smith was given the money "for riding with me." Both men indicated that they had shared some of the money with Smith because he was a friend. The testimony of bank employees supported Durr's testimony that only one robber entered the bank.
 
 
 6
 Smith testified at trial. His testimony appeared contradictory on the question of whether he was present in the car. On direct examination, he was asked:
 
 
 7
 Q. Did you go with anyone on that date, April 25, 1989, to the Huntington National Bank?
 
 
 8
 A. No. sir, I did not.
 
 
 9
 Q. Did you know anything at all about these bank robberies before you were arrested?
 
 
 10
 A. No, sir, I do not.
 
 
 11
 On cross-examination, however, the following exchange took place:
 
 
 12
 Q. Let's talk about this Huntington National Bank for a moment. Are you telling the jury that you were in that Cutlass sitting over in the alley--
 
 
 13
 A. Yes, I am.
 
 
 14
 Q. --on April 25 of 1989 waiting for Genovis Durr to come back.
 
 
 15
 A. Yes, I am.
 
 
 16
 On appeal, Smith does not contest the fact that he was in the car. He only maintains that the government failed to prove that he knowingly and willfully aided and abetted the commission of the bank robbery.
 
 II
 
 17
 The only question for review is whether the evidence would allow a jury to conclude that Smith possessed the requisite mental states of knowledge and intent. When reviewing a jury conviction, this court must affirm the conviction "if there is substantial evidence, taking the view most favorable to the Government, to support it." Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 469 (1942); United States v. Scartz, 838 F.2d 876, 878 (6th Cir.), cert. denied, 109 S.Ct. 303 (1988).
 
 
 18
 * A conviction for aiding or abetting a bank robbery requires that there be some evidence that the defendant had knowledge of the enterprise and intended to participate in it or make it succeed. United States v. Di Stefano, 555 F.2d 1094, 1103 (2d Cir.1977). The evidence in this case showed that appellant was in the car with the confessed bank robbers White and Durr before, during, and after the robbery of the Huntington Bank. He claims that he did not know about, or willingly participate in, the robbery.
 
 
 19
 At trial, Charles White was asked about appellant's knowledge of the robbery:
 
 
 20
 Q. Did [Smith] know that you were going to rob a bank?
 
 
 21
 A. Not at the time he didn't, not until we got there.
 
 
 22
 Q. When you got there, did he know?
 
 
 23
 A. Yes.
 
 
 24
 That testimony was sufficient to allow the jury to conclude that appellant was aware of the intention to rob the bank at some point prior to the commission of the crime. Although Durr testified that appellant was (alternately) "groggy" or "asleep" during the entire affair, the jury was entitled to credit White's testimony over that of Durr.
 
 
 25
 Next, we consider the question of intent. Once the jury had established that appellant had knowledge of the enterprise, the evidence, viewed in the light most favorable to the government, was sufficient to allow it to conclude that he intended to participate in the robbery or to make it succeed. The evidence showed that appellant remained in the car, both during the robbery and afterward, that he knowingly and willfully participated in the escape and helped Durr get in the car, and that he knowingly and willfully took a share of the stolen money.
 
 B
 
 26
 Alternatively, the evidence was sufficient to convict appellant of aiding or abetting a bank robbery solely on the basis of his knowledge that the robbery had occurred and his willing participation in the escape. The crime of bank robbery (18 U.S.C. Sec. 2113(a)) does not end when the robber leaves the bank. United States v. Martin, 749 F.2d 1514, 1518 (11th Cir.1985). The crime " 'continues throughout the escape for purposes of characterizing the involvement of additional parties who knowingly and willfully join in the escape phase only.' " Id., quoting United States v. Willis, 559 F.2d 443, 444 n. 5 (5th Cir.1977). The escape phase comes to an end not when pursuit ceases, but when the "possibility of the item being recovered" has ended. Martin, 749 F.2d at 1518 (citation omitted).
 
 
 27
 The facts in United States v. Jarboe, 513 F.2d 33 (8th Cir.), cert. denied, 423 U.S. 849 (1975), are similar to those in this case. William Jarboe had been travelling with James Klein by car for several days when Klein entered a bank and robbed it. Klein left the bank, got back into the car, and Jarboe drove off. Jarboe claimed to have had no prior knowledge that Klein would rob the bank. On appeal of his conviction for aiding or abetting bank robbery, Jarboe argued that he was guilty of nothing more than being an accessory after the fact, since the robbery ended when Klein left the bank. The court rejected the argument and upheld Jarboe's conviction on the ground that the act of escape was a substantial element of the crime of bank robbery.
 
 
 28
 Similarly, the evidence in this case was sufficient to support the conclusion that appellant aided and abetted Durr and White in the commission of the crime of bank robbery by knowingly and willfully assisting in the escape. White's testimony was sufficient evidence to allow the conclusion that appellant had knowledge of the robbery by the time of the escape. The uncontroverted facts that appellant took a share of the money from the robbery and that the three drove together to a safe location were sufficient to permit the conclusion that appellant was a willing participant in the escape. Finally, although appellant did not drive the get-away car, he participated by knowingly accompanying the escapees, and thus he aided the escape. White's testimony that he gave Smith the money "for riding with me" also implies that Smith's presence was potentially valuable, as his size and assistance in Durr's entry into the car would also support.
 
 III
 
 29
 Because there was sufficient evidence to support the conclusion that Van Lee Smith aided and abetted the robbery of the Huntington National Bank, we AFFIRM the conviction.
 
 
 
 *
 The Honorable Richard A. Enslen, United States District Judge for the Western District of Michigan, sitting by designation
 
 
 [1]
 At the same trial, Smith was acquitted on similar charges in connection with the robbery of a Columbus branch of the BancOhio bank on April 17, 1989. Charles White was named in the same count. White pled guilty to use of a firearm in connection with a crime of violence