PUBLISH

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
06/04/99
THOMAS K. KAHN
CLERK

No. 97-6853

D.C. Docket No. 97-00048-001


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

NANCY V. RHODES,

Defendant-Appellant.


Appeal from the United States District Court
for the Southern District of Alabama

**(June 4, 1999)**


Before TJOFLAT, Circuit Judge, GODBOLD and HILL, Senior Circuit Judges.

TJOFLAT, Circuit Judge:

This case arises from a fraudulent workers' compensation claim filed by Nancy Rhodes, a United States postal carrier in Mobile, Alabama. On September 17, 1994, a vehicle struck Rhodes' parked mail truck. Rhodes then filed a compensation claim that stated both that she was in the truck when it was hit and that she suffered injuries from the accident. After Rhodes filed her claim with the human resources department at the post office where she worked, her claim was mailed to the Department of Labor in Jacksonville, Florida, for processing.

A subsequent post office investigation revealed that Rhodes was not in the truck at the time of the accident and that her compensation claim therefore was fraudulent. Consequently, Rhodes was charged in a two-count indictment with making a false compensation claim, in violation of 18 U.S.C. § 1920 (1994) ("Count I"), and mail fraud, in violation of 18 U.S.C. § 1341 (1994) ("Count II").[1] A jury found her guilty on both counts. The court then sentenced her to twelve months imprisonment and three years of supervised release on each count, with the terms to run concurrently.

Rhodes appeals her conviction and sentence on three grounds: (1) the district court abused its discretion by refusing to strike for cause a prospective juror who was

---

[1] Although violation of 18 U.S.C. § 1920 was a misdemeanor at the time that Rhodes committed the offense, Count I of the indictment erroneously charged her with a felony for violating that section. To correct this error, the Government dismissed Count I and (with Rhodes' consent) filed a direct information charging her with a misdemeanor for violating that section. In this opinion we refer to the direct information and Count I of the indictment collectively as "Count I."

the cousin of a Government witness; (2) the Government failed to prove that she committed mail fraud because the evidence was insufficient to establish that she knew (or reasonably should have foreseen) that her fraudulent claim would be placed in the mail; and (3) the district court improperly sentenced her to a term of supervised release that exceeded the statutory maximum for her violation of 18 U.S.C. § 1920.

## I.

Rhodes first contends that the district court abused its discretion by refusing to strike for cause a venireperson who was the cousin of a Government witness. The prospective juror, Cassandra Browe, was examined by the court after her familial relation to the witness was discovered; Rhodes claims that this colloquy revealed three indications of actual bias that required Browe's dismissal for cause. Browe stated: (1) that she assumed that her cousin's testimony would be truthful because she believed her cousin was an honest person; (2) that she would feel "awkward" if she saw her cousin at a family gathering in the future and had to admit that she had not believed her cousin's testimony; and (3) that she believed that her cousin had a good memory and therefore would remember "exactly" what happened during the events at issue.

Rhodes asserts that Browe's statements revealed that she was predisposed to believe her cousin's testimony (as well as the testimony of other Government witnesses whose views of events were consistent with that of her cousin). Thus, Rhodes contends that Browe was unable to reach a decision based solely on the evidence presented, and, therefore, that the district court should have struck her from the venire for cause.[2]

The decision to strike a prospective juror for cause "upon a suggestion of impartiality is within the sound discretion of the trial judge." United States v. Taylor, 554 F.2d 200, 202 (5th Cir. 1977).[3] We will not overturn that decision absent an abuse of discretion. When a prospective juror reveals actual bias, or when bias is implied because the juror has some special relationship to a party (such as a familial or master-servant relationship), the court must dismiss the prospective juror for cause. See United States v. Nell, 526 F.2d 1223, 1229 & n.8 (5th Cir. 1976). When the juror demonstrates, however, that she can lay aside any

---

[2] After the court denied Rhodes' motion to strike Browe for cause, Rhodes used her last peremptory challenge to remove Browe from the venire. Thus, Rhodes contends that the district court's error was prejudicial because it impaired her statutory right to exercise ten peremptory challenges. See Fed. R. Crim. P. 24(b); United States v. Martin, 749 F.2d 1514, 1518 (11th Cir. 1985) (holding that trial court's erroneous refusal to strike juror for cause impaired defendant's statutory right to his allotted number of peremptory challenges).

[3] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

**4**

opinion she might hold and render a judgment based solely on the evidence presented in court, then dismissal is not required. See United States v. Martin, 749 F.2d 1514, 1517-18 (11th Cir. 1985).

We find no abuse of discretion in the case at hand. Although Browe's familial relationship to the witness and her statements during voir dire indicated that she potentially was biased against Rhodes, further examination by the court revealed that Browe could lay aside her relationship to the witness and judge Rhodes fairly and impartially. During voir dire, Browe was examined by the court as follows:

> Q. [E]ven with your past experience with your cousin, if it were shown that her testimony was [un]truthful, would you have any hesitancy in deciding that her testimony was untruthful and not giving it any credence?
> A. No, sir.
> Q. You would perform your duty and you do understand that would be your duty?
> A. Yes.
> Q. Likewise, even though you know she was a smart person, as I believe you indicated, if it was shown that she had not remembered facts correctly, would the fact that you have known her in the past have any impact on your ability to make the right decision . . . . In other words, that her memory may not have been as well as you remember it, would that cause you any problems?
> A. No, sir.

Thus, although Browe may have had preconceived notions of her cousin's honesty and veracity, she demonstrated that those notions would not prevent her from deciding the case solely based on the evidence presented in court; any bias that she had was "[left outside] the courtroom door." Depree v. Thomas, 946 F.2d 784, 790 (11th Cir. 1991).[4] In sum, Rhodes is not entitled to a new trial on the ground that Browe was unqualified to serve as a juror.

II.

Rhodes next challenges her mail fraud conviction, on the ground that there was insufficient evidence that she knew (or reasonably foresaw) that her fraudulent claim would be placed in the mail.[5] In order to be convicted of mail fraud, a defendant (even a postal carrier) must have known that use of the mail would

---

[4] The facts of the case at hand are similar to those we addressed in Depree, which involved a trial for the murder of an Atlanta police officer. In that case, one of the venirepersons was an ex-deputy sheriff who indicated that he was unsure that he could put aside his personal feelings about the murder of a fellow law enforcement officer. The court then examined the juror as follows:

Q.     [D]o you believe that you could be a fair and impartial juror, that is, fair to the State and to the defendants, in the trial of this case?

A.     . . . I would like to think that I could, yes sir.

Id. at 789. Based on this colloquy, we upheld the court's decision that the venireperson could act as an impartial juror. In the present case, Browe was even more confident than the venireperson in Depree that she could decide the case fairly and impartially. We see no reason to conclude that Browe was less qualified to serve on the jury than the venireperson in Depree.

[5] We review the sufficiency of the evidence de novo, viewing the evidence in the light most favorable to the Government. See United States v. Lopez-Ramirez, 68 F.3d 438, 440 (11th Cir. 1995).

follow in the ordinary course of business, or that he should have foreseen such use even though it was unintended.  See Pereira v. United States, 347 U.S. 1, 8-9, 74 S. Ct. 358, 363, 98 L. Ed. 435 (1954).  The Government sought to prove this element of the offense by showing that after Rhodes submitted her workers' compensation form to the human resources department where she worked, that office sent the form via the mail to the Department of Labor in Jacksonville, Florida.  Rhodes contends that this evidence only shows that the mail was used; it says nothing about whether she knew or reasonably foresaw that it would be used.[6]

Rhodes' contention ignores one crucial piece of evidence: the workers' compensation form itself.[7]  We conclude that this form put her on notice that it would be placed in the mail because it indicated that the Department of Labor – not the Postal Service – would process her claim.  Two sections of the form lead us to this conclusion.

_____

[6] The Government also sought to prove this element by showing that Rhodes had filed two previous workers' compensation claims, both of which were mailed to Jacksonville.  The Government contends that these prior claims are circumstantial evidence that Rhodes knew that the instant claim also would be placed in the mail.  We disagree.  The mere fact that Rhodes handed a compensation claim to a human resources employee on two previous occasions does not change the fact that she might have had no idea what happened to that claim after it left her hands; if the Government wanted to make use of the fact that she filed previous claims then it had to show that she knew (or reasonably foresaw) that those claims would be mailed.

[7] The Government submitted her completed workers' compensation form into evidence at trial.

First, at the top of the form's front page, in large bold letters, appear the words "U.S. Department of Labor, " and in smaller letters immediately below are written the words "Employment Standards Administration Office of Workers' Compensation Programs."  This should have indicated to Rhodes that the Department of Labor is the government entity that administers the workers' compensation program, and therefore that agency, not the Postal Service, would process her compensation claim.  Further, Rhodes should have understood that the Department of Labor issued the form, and that that agency would receive the form after was it was completed.

Second, one of the sections of the form states as follows: "If the <u>employing agency</u> controverts [the compensation claim], state the reason in detail."[8] (Emphasis added).  This question should have indicated to Rhodes that there is a separate government entity responsible for adjudicating disputes over compensation claims that arise between workers and their employing agencies.  Thus, Rhodes reasonably should have understood that this entity, rather than her employing agency, would receive her completed form.

---

[8] This statement appears in the section of the form that is filled out by the supervisor of the employee who is filing the claim.

Thus, the workers' compensation form itself put Rhodes on notice that it would be sent to the Department of Labor. Because Rhodes could not reasonably have expected that her form would be hand-carried to that agency, a reasonably jury could conclude that Rhodes should have known that her form would be sent by mail.[9] See United States v. Fore, 169 F.3d 104, 109 (2d Cir. 1999) (holding that defendant reasonably could have foreseen use of the mails because he had completed insurance forms that required verification from his doctor, and the insurance company and his doctor did not share the same location).

### III.

We turn finally to Rhodes' contention that the district court sentenced her to a term of supervised release that exceeded the statutory maximum for her conviction on Count I. As part of the sentence that the court imposed for that conviction, the district court sentenced Rhodes to three years of supervised release, a term that can be imposed following a felony conviction. See 18 U.S.C. § 3583(b) (1994). Violation of section 1920, however, was a misdemeanor at the time that

---

[9] If the Department of Labor maintained an office in the building where Rhodes worked (or if Rhodes erroneously believed that it had an office there), then she reasonably might have expected that her form would be hand-delivered to that agency. As it was, however, the Department of Labor's office was located 400 miles away, in Jacksonville, Florida. Further, we see no reason to assume that Rhodes mistakenly believed that the Postal Service shared its building in Mobile with the Department of Labor.

**9**

Rhodes committed the offense, and carried a one-year maximum term of supervised release. See 18 U.S.C. § 1920. We therefore agree with Rhodes that the term of supervised release imposed by the court for her conviction on Count I exceeded the statutory maximum.

IV.

For the foregoing reasons, we VACATE that portion of Rhodes' sentence that imposes a three-year term of supervised release for her conviction on Count I, and we instruct the district court to amend its judgment to impose a one-year term of supervised release for that conviction. In all other respects, the district court's judgment is AFFIRMED.

SO ORDERED.