[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 21-13701

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

ADRIAN HARDY,
JEROME SIMMONS,

Defendants- Appellants.

_____

Appeals from the United States District Court
for the Southern District of Florida
D.C. Docket No. 0:17-cr-60119-KAM-2

_____

Before ROSENBAUM, JILL PRYOR, and BRANCH, Circuit Judges.

PER CURIAM:

In these consolidated appeals, Adrian Hardy and Jerome Simmons challenge the sentences they received upon resentencing for crimes arising from armed robberies of four jewelry stores in Florida and Georgia in March and April of 2017. After careful review, we affirm.

After a jury trial, Hardy was convicted of one count of conspiracy to commit Hobbs Act robbery and one count of Hobbs Act robbery, *see* 18 U.S.C. § 1951(a), two counts of brandishing a firearm in furtherance of a crime of violence, *see* 18 U.S.C. § 924(c)(1)(A), and four counts of kidnapping, *see* 18 U.S.C. § 1201(a)(1). He was originally sentenced to concurrent terms of 312 months on the robbery and kidnapping counts, plus consecutive terms of 84 months each for the brandishing counts, for a total of 480 months of imprisonment. In Hardy's first appeal, we vacated one of his § 924(c) convictions because it was based on kidnapping, which does not qualify as a crime of violence under § 924(c), and we remanded to the district court for resentencing without that conviction. *United States v. Simmons*, 847 F. App'x 589, 593 (11th Cir. 2021). On remand, the district court imposed a total sentence of 432 months, reducing Hardy's overall sentence to account for his "successful[] appeal[] [of] his sentence," though not to the full extent Hardy requested.

For his part, the jury convicted Simmons of one count of conspiracy to commit Hobbs Act robbery and two counts of Hobbs Act robbery, *see id.* § 1951(a), as well as two counts of brandishing a firearm in furtherance of a crime of violence, *see id.* § 924(c)(1)(A). He was originally sentenced to life imprisonment. On appeal, we held that the district court erred in enhancing his sentence under the career-offender guideline, U.S.S.G. § 4B1.1, and the "three-strikes" law, 18 U.S.C. § 3559(c), and we vacated and remanded for resentencing. *See Simmons*, 847 F. App'x at 594–95. On remand, the court recalculated the guideline range and applied enhancements for use of a firearm, abduction, and carjacking, among others. *See* U.S.S.G. §§ 2B3.1(b)(2)(B), (4)(A) & (5).

Hardy appeals his sentence on the ground that the district court violated his due-process right to a resentencing free of vindictiveness by not reducing his sentence by the full 84 months previously imposed for the vacated § 924(c) conviction. Simmons appeals the district court's application of the abduction, carjacking, and firearm enhancements, arguing that the court improperly relied on coconspirator conduct not relevant to his offenses and also double counted certain conduct.[1]

---

[1] Both defendants also argue that Hobbs Act robbery does not qualify as a crime of violence for purposes of 18 U.S.C. § 924(c). We rejected this same argument in their first appeal, *see Simmons*, 847 F. App'x at 593, so that decision is law of the case here. *See United States v. Anderson*, 772 F.3d 662, 668 (11th Cir. 2014) (under the law-of-the-case doctrine, an issue decided at one stage of a case is binding at later stages of the same case). Nor has any change

## I.

We start with Hardy's challenge to his sentence on the ground that it was unconstitutionally vindictive. We review *de novo* whether a sentence was unconstitutionally vindictive.[2] *United States v. Mathurin*, 868 F.3d 921, 931 (11th Cir. 2017).

On resentencing, a district court is free to unbundle the entire "sentencing package" and resentence a defendant anew as to the surviving counts of conviction. *United States v. Fowler*, 749 F.3d 1010, 1015–16 (11th Cir. 2014). "The thinking is that when a conviction on one or more of the component counts is vacated for good, the district court should be free to reconstruct the sentencing package (even if there is only one sentence left in the package) to ensure that the overall sentence remains consistent with the guidelines, the § 3553(a) factors, and the court's view concerning the proper sentence in light of all the circumstances." *Id.* This Court's vacatur of a sentence "wipes the slate clean" and generally requires

---

in the law has occurred since that appeal, so we remain bound by our precedent, which holds that Hobbs Act robbery constitutes a crime of violence for purposes of § 924(c). *See United States v. Eason*, 953 F.3d 1184, 1191 (11th Cir. 2020) (noting our precedent "that Hobbs Act robbery satisfies the elements clause in 18 U.S.C. § 924(c)").

[2] The government says that we review for plain error, despite Hardy's objection to the district court's failure to "take off the full 84" at resentencing, because he did not articulate the objection in terms of due process or vindictiveness. We need not resolve this issue because we agree with the government that his argument fails even under *de novo* review.

the district court to conduct "a resentencing as if no initial sentencing ever occurred." *United States v. Burke*, 863 F.3d 1355, 1359 (11th Cir. 2017).

Nevertheless, a district court's wide discretion at resentencing must not be exercised with the purpose of punishing a successful appeal. *Alabama v. Smith*, 490 U.S. 794, 798 (1989). That is, due process "requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial." *North Carolina v. Pearce*, 395 U.S. 711, 725 (1969), *holding modified by Smith*, 490 U.S. at 798–99.

Under *Pearce*, a presumption of vindictiveness at resentencing arises if two conditions are present: (1) the sentencing judge "imposes a more severe sentence"; and (2) no non-vindictive reasons for doing so "affirmatively appear" in the record. *Fowler*, 749 F.3d at 1019 (quoting *Pearce*, 395 U.S. at 726). For the first inquiry, we apply the "aggregate package approach," comparing the defendant's new total aggregate sentence to his old one. *Id.* at 1023. So long as the new total sentence is less than the old total sentence, no presumption of vindictiveness arises. *See id.*

Where the presumption of vindictiveness does not apply, the defendant must affirmatively prove actual vindictiveness. *Mathurin*, 868 F.3d at 937; *see Wasman v. United States*, 468 U.S. 559, 569 (1984). We have held that a defendant failed to show actual vindictiveness where he offered "no reason to doubt the judge's stated [non-vindictive] rationale" for imposing the sentence, and

there was "no evidence to suggest it was in any way vindictive." *Mathurin*, 868 F.3d at 937.

Here, Hardy has not shown that he was resentenced based on an impermissible vindictive motive. He acknowledges that vindictiveness cannot be presumed here because the district court reduced the length of his overall sentence—from 480 to 432 months. *See Fowler*, 749 F.3d at 1023. And nothing in the record suggests that the sentence was imposed for the purpose of punishing him for his successful appeal.

On the contrary, the district court expressly recognized that Hardy deserved a reduction in his overall sentence for his successful appeal, and it reduced his total sentence by 48 months. Yet the court explained that, in its view, a more "significant sentence" than requested by Hardy was "warranted under the facts of the case" and the § 3553(a) factors, which it discussed in detail. [Doc. 456 at 33–37] The court noted that, in originally sentencing Hardy, it had lowered the sentence on the non-brandishing counts to account for the "extra 84 months tagged on to his [g]uideline range." [*Id.* at 37] These comments show that the court viewed the original sentence as a "package sentence," which it was entitled to reconsider once the § 924(c) conviction and 84-month consecutive sentence were vacated. *See Fowler*, 749 F.3d at 1017–18, 1023. Hardy has offered no reason to doubt the court's stated non-vindictive rationale, nor is there any evidence to suggest that the court's decision was in any way vindictive. *See Mathurin*, 868 F.3d at 937.

Accordingly, we affirm Hardy's sentence.

## II.

Simmons challenges the district court's recalculation of his guideline range at resentencing. Simmons contends that the court erred in applying enhancements for abduction and carjacking based solely on a coconspirator's conduct after escaping from the immediate area of the robbery and after Simmons was apprehended. He also says that the court engaged in impermissible double counting when it applied a firearm enhancement based on conduct which, in his view, formed the basis for his § 924(c) convictions. We consider each argument in turn.

## A.

"Whether a co-conspirator's act was reasonably foreseeable to the defendant so that it qualifies as relevant conduct is a question of fact reviewed for clear error." *United States v. Valarezo-Orobio*, 635 F.3d 1261, 1264 (11th Cir. 2011). When applying clear-error review, we will affirm the district court unless we are convinced that it made a mistake. *United States v. Gordillo*, 920 F.3d 1292, 1297 (11th Cir. 2019). There is "no clear error in cases in which the record supports the district court's findings." *United States v. Petrie*, 302 F.3d 1280, 1290 (11th Cir. 2002).

For robbery offenses, a four-level increase to the defendant's offense level applies "[i]f any person was abducted to facilitate commission of the offense or to facilitate escape." U.S.S.G. § 2B3.1(b)(4)(A). A two-level increase applies if the offense involved carjacking. *Id.* § 2B3.1(b)(5). The government has the

burden of introducing "sufficient and reliable evidence" to prove the facts necessary to support a challenged sentencing enhancement by a preponderance of the evidence. *United States v. Grady*, 18 F.4th 1275, 1291–92 (11th Cir. 2021), *cert. denied*, 142 S. Ct. 2871 (2022).

When calculating the guideline range, the district court may rely on "all relevant conduct," not just charged conduct. *United States v. Rodriguez*, 751 F.3d 1244, 1256 (11th Cir. 2014) (quotation marks omitted). In the case of jointly undertaken criminal activity, relevant conduct includes "all acts and omissions of others that were (i) within the scope of the jointly undertaken criminal activity, (ii) in furtherance of that criminal activity, and (iii) reasonably foreseeable in connection with that criminal activity," whether those acts occurred in preparation for the offense, during its commission, or to avoid detection or responsibility. U.S.S.G. § 1B1.3(a)(1)(B). All three prongs must be met to be included as relevant conduct. *Id.* § 1B1.3, cmt. n.3(A). In applying this test, we first determine the "scope of criminal activity the defendant agreed to jointly undertake." *Grady*, 18 F.4th at 1292 (quotation marks omitted). Then, we must "consider all reasonably foreseeable acts and omissions of others in the jointly undertaken criminal activity." *Id.* (quotation marks omitted).

### 1.

The record shows that, on April 13, 2017, Simmons, Hardy, and a coconspirator entered the LSO Jewelers and Repair store armed with firearms, locked the door, ordered employees to the

ground at gunpoint, and began ransacking the store. The gunmen communicated by walkie-talkie with another coconspirator, Christopher Brinson, who was waiting outside in a car ready to act as the getaway driver. After about ten minutes, Brinson notified the robbers that the police had arrived—an off-duty officer had noticed the men enter the store and called the police. Upon seeing the police out front, the robbers dropped the merchandise and fled out the back, going separate directions. Simmons was found hiding in a nearby parking lot. Hardy made it farther, escaping the perimeter established by law enforcement and forcibly entering a nearby residence, where he held the four individuals inside hostage while he planned his escape, all the while checking for police outside. He then forced the victims to drive him from Port Saint Lucie to Fort Lauderdale in their vehicle.

The district court ruled that Hardy's conduct of abducting the victims and commandeering their car during escape from the robbery could be attributed to Simmons as the reasonably foreseeable conduct of a coconspirator in furtherance of the robbery. In the court's view, the jointly undertaken criminal activity included "escape with whatever means were reasonably available to them," and that it was reasonably foreseeable that a coconspirator escaping from an armed robbery upon detection by police would "engage in other criminal conduct in order to effectuate [his] escape." Accordingly, it applied the four-level abduction enhancement, U.S.S.G. § 2B3.1(b)(4)(A), and the two-level carjacking enhancement, *id.* § 2B3.1(b)(5).

2.

Here, the district court did not clearly err in attributing Hardy's abduction and carjacking conduct to Simmons as relevant conduct for purposes of sentencing.

Our decision in *United States v. Cover* is instructive. In *Cover*, as here, the defendant challenged the application of abduction and carjacking sentencing enhancements based on the conduct of a conspirator during escape from an armed robbery. *See* 199 F.3d 1270, 1274–75 (11th Cir. 2000), *superseded by regulation on other grounds as noted in United States v. Diaz*, 248 F.3d 1065, 1107 (11th Cir. 2001). Cover and two accomplices, armed with firearms, took control of a bank by threats of violence, forcing fifteen victims to lie on the floor. *Id.* at 1272. When police responded to a silent alarm, Cover and one accomplice were apprehended attempting to flee, while the other accomplice escaped by carjacking and kidnapping a motorist at gunpoint outside the bank. *Id.* at 1273.

On appeal in *Cover*, we agreed with the district court that the accomplice's escape by means of carjacking and kidnapping was reasonably foreseeable to Cover, given the surrounding circumstances, including the conspirators' actions before the arrival of police. *Id.* at 1274–75. We rejected the argument that the abduction and carjacking were unforeseeable because it was not the getaway the conspirators had planned: "The fact that the co-conspirators agreed to a plan that did not involve carjacking or abduction does not preclude the district court from finding that

carjacking and abduction were reasonably foreseeable if 'the original plan went awry' and the police became involved." *Id.* at 1275.

Here, the record supports the district court's ruling that Hardy's abduction and carjacking were reasonably foreseeable actions within the scope and in furtherance of the jointly undertaken activity. That agreed-upon activity included an armed robbery during which employees of the jewelry store were ordered to the ground at gunpoint. While the conspirators' getaway plans go awry when police arrive, Simmons concedes, relevant conduct in an armed robbery can include an accomplice's resort to violence to escape upon detection. *See id.* at 1274–75. And, given the robbers' conduct preceding detection, the possibility of violence during escape was plainly within the scope of the jointly undertaken activity in this case.

True, the abduction and carjacking conduct in this case was slightly more removed from the robbery than in *Cover*, where that conduct occurred just outside the bank being robbed. The critical question, then, is when the escape phase of the robbery ended. We have recognized that "escape immediately following the taking is a necessary phase of most violent bank robberies." *United States v. Willis*, 559 F.2d 443, 444 (5th Cir. 1977). In other words, the robbery is not over "until the immediate removal phase comes to a halt." *Id.* To be more specific, "the escape continues so long as flight occurs from the possibility of hot pursuit." *United States v. Martin*, 749 F.2d 1514, 1518 (11th Cir. 1985).

We cannot say it was a mistake to conclude that the immediate escape from the robbery was still in progress when the abduction and carjacking here occurred. *See Gordillo*, 920 F.3d at 1297. Although a close call, the record supports the view that Hardy engaged in his conduct during flight from the possibility of hot pursuit, such that Hardy's conduct was, as in *Cover*, sufficiently connected to be considered part of the armed robbery itself. *See Martin*, 749 F.2d at 1518. We therefore affirm the application of the abduction and carjacking enhancements. *See* U.S.S.G. § 2B3.1(b)(4) & (5).

## B.

We review *de novo* a claim of impermissible double counting. *United States v. Dudley*, 463 F.3d 1221, 1226 (11th Cir. 2006). "Impermissible double counting occurs only when one part of the Guidelines is applied to increase a defendant's punishment on account of a kind of harm that has already been fully accounted for by application of another part of the Guidelines." *Id.* at 1226–27 (quotation marks omitted).

The robbery guideline requires a six-level enhancement "if a firearm was otherwise used" during the crime. U.S.S.G. § 2B3.1(b)(2)(B). When a defendant is convicted of a § 924(c) violation as well as the predicate crime of violence, however, the defendant's possession of a weapon cannot be used to enhance the offense level of the predicate offense, to prevent double counting the same conduct. *United States v. Le*, 256 F.3d 1229, 1239 (11th

Cir. 2001); *United States v. Diaz*, 248 F.3d 1065, 1107 (11th Cir. 2001).

But that rule against double counting does not apply when a defendant "received weapons enhancements only in connection with the robberies for which he did not receive 18 U.S.C. § 924(c) convictions." *United States v. Pringle*, 350 F.3d 1172, 1180–81 (11th Cir. 2003). In other words, the rule does not bar enhancing a conspiracy sentence for a coconspirator's use of a firearm during robberies that did not form the basis of a defendant's § 924(c) conviction. *Id.* at 1179.

Here, the district court did not err in applying the six-level enhancement for use of a firearm to Simmons's conspiracy count. The court specifically applied the enhancements in connection with the Lily's Jewelers and Bishop's Jewelers robberies, for which Simmons did not receive § 924(c) convictions. Under *Pringle*, therefore, the enhancements did not amount to double counting, even though the conspiracy count covered all four robberies. *See id.* And contrary to Simmons's arguments, the use of a firearm during the Lily's and Bishop's robberies did not need to be alleged in the indictment or found by a jury for purposes of the advisory guideline range. *See United States v. Charles*, 757 F.3d 1222, 1225–26 (11th Cir. 2014) (under an advisory guidelines scheme, a "district court may continue to make guidelines calculations based upon judicial fact findings and may enhance a sentence—so long as its findings do not increase the statutory maximum or minimum authorized by facts determined in a guilty plea or jury verdict").

For these reasons, we affirm Simmons's sentence.

**AFFIRMED.**