[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 10-15038
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DECEMBER 7, 2011
JOHN LEY
CLERK

D.C. Docket No. 1:09-cv-20009-PAS

TONY BRUCE,

                                        Petitioner-Appellant,

versus

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,

                                        Respondent-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(December 7, 2011)

Before MARCUS, PRYOR and MARTIN, Circuit Judges.

PER CURIAM:

Tony Bruce, a Florida prisoner, appeals pro se the denial of his petition for a writ of habeas corpus. 28 U.S.C. § 2254. We issued a certificate of appealability to address "[w]hether the district court erred in finding that Bruce's attorney did not provide ineffective assistance of counsel by failing to strike Juror Lesleye Roberts." Because it was not an unreasonable application of clearly established federal law for the Florida courts to conclude that Bruce failed to establish that his attorney acted deficiently, we affirm.

## I. BACKGROUND

Bruce proceeded to trial on charges of first degree murder, attempted armed robbery, unlawful possession of a firearm during a criminal offense, and two counts of unlawful possession of a firearm by a convicted felon. During voir dire, a prospective juror, Roberts, stated that she remembered the facts of Bruce's case. Roberts, who was a correctional officer, told the trial court that she had heard about the case, but she did not recall any facts that suggested Bruce was guilty. The trial court asked Roberts if she would be able to render a verdict based on the evidence presented, and Roberts answered affirmatively.

Counsel questioned Roberts about Bruce. Roberts told a prosecutor that she was an officer at the Stockade, a center used for training and storing equipment for law enforcement and housing inmates in Dade County, Florida. Roberts stated

that Bruce looked familiar, but Roberts could not identify how she recognized Bruce. In response to questions by Bruce's attorney, Roberts stated repeatedly that Bruce's face was "familiar." Roberts also stated that she had "worked at many facilities" within the Stockade and, although she might have seen Bruce, he might also just "look[] like someone" at the center. When Bruce's attorney asked Roberts if she had seen Bruce's prison card, Roberts responded negatively.

The trial court also questioned Roberts about Bruce. The trial court asked Roberts if she could "decide [Bruce's] case solely upon what [she] hear[d] in court and be fair to [Bruce] and be fair to the State regardless of [her occupation]," even if she "perhaps [had] recognized him at the [Stockade]," and Roberts responded, "Of course." On a second day of voir dire, Roberts told the trial court that her profession as a corrections officer and her association with individuals in law enforcement would not affect her fairness of judgment.

Counsel also questioned Roberts on the second day of voir dire. A prosecutor asked Roberts if, given her profession, she could be fair, and she responded affirmatively. The prosecutor and Bruce's attorney each read a list of their respective witnesses to determine if they had any affiliation with a prospective juror and, when neither received any response, each attorney questioned Roberts. The prosecutor asked Roberts if she recognized any of the

correctional officers sitting in the courtroom, and Roberts stated that the officers looked familiar, but she did not know them by name. Bruce's counsel asked Roberts if she recognized any of the defense witnesses, including "Julie Struve," and Roberts responded, "No, not by name."

At the conclusion of voir dire, Roberts remained on the jury panel. Both the prosecutor and Bruce's attorney approved the panel, but the district court did not administer an oath to the jury.

The next day, Roberts told the trial court that she knew Julian Struve, who was a corrections officer at the Stockade. When questioned by the trial court, Roberts stated that she did not "socialize" with Struve and that he was a "co-worker" who "work[ed] in a different shift." The trial court asked Roberts if she would "treat [Struve's] testimony any differently from anyone else's," and Roberts responded "no." Counsel did not question Roberts, and Bruce's attorney did not object to the decision to leave Roberts on the jury panel.

After the jury found Bruce guilty of first degree murder, attempted robbery with a firearm, and possession of a firearm during a criminal offense, but before the penalty phase of Bruce's trial, the trial court held another hearing about Roberts. The trial court began the hearing by announcing that Roberts had reported making contact with Bruce at the Stockade after the jury returned its

4

verdict. The prosecutor expressed doubt about whether Roberts could be fair and asked the trial court to remove Roberts from the jury. When the trial court questioned Roberts, she stated that she was not "able to continue" and could not "serve as a juror." Roberts commenced a narrative in which she insisted that she should not have been "chosen" to sit on the jury because "[Bruce] looked familiar to [her]," she worked where "the inmates [have] been housed since May of 2000," and Struve was "assigned at [Roberts's] . . . facility." Roberts vented about not being informed that Roberts "reside[d] in the area adjacent to where [she] work[ed], where he [had] a complete visual of [her] whereabouts, of [her] coming and [her] going, and [her] interaction with other inmates."

During the narrative, Roberts stated that, "[a]t [the] point [when she identified Struve before trial],[she] put the connection together, that perhaps [Bruce] was housed there," but Roberts explained on further questioning that she did not realize at the time of trial that Bruce was incarcerated at the Stockade. Bruce's attorney asked Roberts if she "believe[d] that there was a connection of officer [Struve] to [Bruce's] case," and Roberts responded "no." Roberts explained that she knew Struve "was a witness," but "for what purpose . . . [she] [had] no idea." When Roberts stated that she was "waiting for [Struve's] testimony to determine what his connection was to the case," Bruce's attorney

5

remarked that Struve "didn't testify in the guilt phase." Bruce's attorney asked Roberts if she "believe[d] that [Bruce] was in fact an inmate at the [S]tockade," to which Roberts responded, "No, I did not." Roberts explained that Bruce "looked familiar," but "[w]here [she] knew him from, [she] was not certain."

The trial court next questioned Roberts about the timing of her interaction with Bruce and what, if any, effect it had on the verdict. Roberts stated that she first learned that Bruce was housed in the Stockade "on Saturday," the day after the jury found Bruce guilty. Roberts stated that, "[h]ad she known [Bruce] was housed in the [S]tockade, [she] would not have felt comfortable serving as a juror," but Roberts acknowledged that she did not learn of Bruce's location until "after the verdict had already been given."

Bruce's counsel moved for a mistrial, which the trial court denied. The prosecutor and Bruce agreed to excuse Roberts from the jury before the penalty phase of Bruce's trial. The trial court removed Roberts from the jury panel.

At the conclusion of the penalty phase, the jury recommended that Bruce receive a sentence of imprisonment for life. The trial court sentenced Bruce to imprisonment for life for committing first degree murder and to a consecutive term of 30 years of imprisonment for his attempted robbery crime.

Bruce moved a Florida court for post-conviction relief on the ground that

his trial attorney was ineffective for failing to remove Roberts from the jury venire, but the state court denied Bruce's motion. See Fla. R. Crim. P. 3.850. The Florida court ruled that, based on Roberts's responses during voir dire, including her statement that "she could be fair, [Bruce's] counsel was not ineffective in failing to strike her." A Florida appellate court affirmed without opinion.

Bruce filed a federal habeas petition and repeated his claim of ineffective assistance of trial counsel, 28 U.S.C. § 2254, but the district court denied the writ. The district court ruled "that the state courts did not make an unreasonable factual finding or a decision contrary to federal principles in finding Bruce's counsel was not ineffective for failing to strike Roberts."

## II. STANDARD OF REVIEW

We review de novo the denial of a petition for a writ of habeas corpus. Borden v. Allen, 646 F.3d 785, 808 (11th Cir. 2011). A petitioner is entitled to a writ of habeas corpus if the state court reached a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1). A state court makes an "unreasonable application" of clearly established federal law if the court " 'identifies the correct governing legal principle from [the] decisions [of the Supreme Court] but unreasonably applies that principle to the facts' of petitioner's case." Wiggins v.

Smith, 539 U.S. 510, 520, 123 S. Ct. 2527, 2534–35 (2003) (quoting Williams v. Taylor, 529 U.S. 362, 413, 120 S. Ct. 1495, 1523 (2000)).  To prevail on an argument involving an unreasonable application of federal law, a petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  Harrington v. Richter, 562 U.S. ___, 131 S. Ct. 770, 786–87 (2011).  Because the factual findings of the state court are "presumed to be correct," the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

### III. DISCUSSION

Bruce must "[s]urmount[] [a particularly] high bar" to obtain a writ of habeas corpus on his claim of ineffective assistance of counsel.  Padilla v. Kentucky, 559 U.S. ____, 130 S. Ct. 1473, 1485 (2010).  Not only must Bruce prove that his counsel committed an error and that error was "so serious as to deprive [him] of a fair trial," Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984), he also must overcome the "doubly deferential" standard applied to the decisions of counsel in habeas corpus review.  Knowles v. Mirzayance, 556 U.S. 111, 129 S. Ct. 1411, 1420 (2009).  Based on the deference

8

given the decision of the state court to deny Bruce's claim of ineffective assistance, the district court was required to determine "not whether counsel's actions were reasonable[,]" but instead "whether there [was] any reasonable argument that counsel satisfied Strickland's deferential standard." Harrington, 131 S. Ct. at 788.

Bruce was entitled to a fair adjudication of his criminal charges by a "panel of impartial, 'indifferent' jurors," but that did not require that veniremembers "be totally ignorant of the facts and issues involved," Irvin v. Dowd, 366 U.S. 717, 722, 81 S. Ct. 1639, 1642 (1961), or "free of opinion towards crime," United States v. Tegzes, 715 F.2d 505, 507 (11th Cir. 1983). The fairness of a trial is doubtful only when a veniremember reveals that she "has such a fixed opinion, based on [her] bias [or a presumed bias], that [she] 'could not judge impartially the guilt of the defendant.' " Depree v. Thomas, 946 F.2d 784, 788 (11th Cir. 1991) (quoting Patton v. Yount, 467 U.S. 1025, 1035, 104 S. Ct. 2885, 2891 (1984)). If the veniremember confirms that she can be impartial under questioning designed to " 'create[] a reasonable assurance that prejudice would be discovered if present,' " United States v. Nell, 526 F.2d 1223, 1229 (11th Cir. 1976) (quoting United States v. Dellinger, 472 F.2d 340, 367 (7th Cir. 1972)), she is qualified to sit on the jury. "It is sufficient if the juror can lay aside [her] impression or

9

opinion and render a verdict based on the evidence presented in court." Irvin, 366 U.S. at 723, 81 S. Ct. at 1643.

In Depree, we affirmed the denial of habeas relief to a petitioner who challenged the refusal of a Georgia court to remove two venirepersons who had connections to law enforcement. 946 F.2d at 788–92. Because the question of partiality is " 'plainly a question of historical fact' " and, based on the deference accorded the findings of state courts in habeas proceedings, we reviewed the voir dire that preceded Depree's trial to determine if the record supported the finding of the state court " 'that the jurors . . . would be impartial.' " Id. at 788 (quoting Patton, 467 U.S. at 1036, 1038, 104 S. Ct. at 2891, 2892–93). That review revealed that the venirepersons, despite their presumed biases, expressed that they could decide Depree's case impartially. Isaac Hodgkins admitted that he was "afraid" that his past employment as a deputy sheriff would affect "the way [he] would think," but the state court reasonably found him qualified to serve as a juror because he "continually asserted that he would be able to set aside his personal feelings in evaluating Depree's case." Id. at 789–90. The state court also reasonably determined that Sonya Reynolds was impartial. Although Reynolds admitted that her relationship with family members who served on the Atlanta police force "would have some influence over" her decisionmaking, she stated that

10

she did not "have any doubt about being fair and impartial" and could set aside any personal feelings to evaluate the evidence objectively.  Id. at 791 n.14.

As in Depree, " 'there is fair support in the record for the . . . conclusion [of the state court] that [Bruce's attorney had good reason to conclude that Roberts] . . . would be impartial.' " Id. at 788 (quoting Patton, 467 U.S. at 1038, 104 S. Ct. at 2892–93).  Roberts was questioned for two days by the trial court and counsel about her impartiality, and Roberts stated repeatedly that she could decide Bruce's case based on the evidence and that she could be fair to Bruce.  None of Roberts's responses or actions suggest that her statements were deceitful, despite Bruce's assertions to the contrary.  Roberts was forthcoming with information relevant to her qualification as a juror, including her occupation and her familiarity with defense witness Officer Stuve.  When Roberts later interacted with Bruce at the jail facility, Roberts continued to be candid with the trial court and explained that she could no longer serve on the jury.  Bruce argues that Roberts was biased and that became "plain . . . when she recused herself from the panel after she reached a jury verdict," but the record provides no reason to believe that Roberts would have been reticent about admitting any bias that existed before her encounter with Bruce.  "At most, the record establishes that [Roberts] might have brought a bias to the courtroom door; it does not demonstrate that [Roberts] could not leave [her]

11

bias outside that door" when she was seated for the guilt phase of Bruce's trial. Id. at 790.

The district court correctly denied Bruce habeas relief. The Florida court reasonably determined that Bruce failed to establish that his counsel was ineffective. Counsel's performance is deficient only if it falls below the wide range of competence under "prevailing professional norms" of attorneys in criminal cases, Strickland, 466 U.S. at 688, 104 S. Ct. at 2065, and must be evaluated in the light of the "the facts of the particular case, viewed as of the time of counsel's conduct," id. at 690, 104 S. Ct. at 2066. Bruce alleged no facts to establish that his attorney overlooked a meritorious challenge to Roberts. "Strickland does not guarantee perfect representation, only a reasonably competent attorney," Harrington, 131 S. Ct. at 791 (internal quotation marks omitted), and based on the information available to Bruce's attorney at the time of trial, there was no reason for him to question Roberts's impartiality. See Depree, 946 F.2d at 788–92; see also United States v. Rhodes, 177 F.3d 963, 965–66 (11th Cir. 1999) (affirming the denial of a new trial based on the perceived bias of a veniremember who was the cousin of a witness for the government). The state court reasonably concluded that Bruce's attorney did not act deficiently.

## IV. CONCLUSION

The denial of Bruce's petition for a writ of habeas corpus is **AFFIRMED**.

MARTIN, Circuit Judge, specially concurring:

I concur only in the judgment affirming the District Court's dismissal of Mr. Bruce's § 2254 petition.